**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**INCREDIBLE INVESTMENTS LIMITED,**

                        **Plaintiff,**

      **v.**

**FRANK PARLATO, JR.,**
**WHITESTAR DEVELOPMENT CORP.,**
**ONE NIAGARA, INC.,**
**ONE NIAGARA PLAZA, INC.,**
**TOURIST SERVICES, LLC,**
**GORDON REGER,**
**LARRY REGER,**
**REMAN LLC,**
**RH NIAGARA BUILDING, LLC,**
**JOHN DOES 1 through 10,**

                    **Defendants.**

**AMENDED**
**COMPLAINT**

**Civil Action No.:  09-CV-576**

---

        Plaintiff Incredible Investments Limited ("Incredible Investments"), for its complaint against defendants Frank Parlato, Jr. ("Parlato"), Whitestar Development Corp. ("Whitestar"), One Niagara, Inc., One Niagara Plaza, Inc., Tourist Services, LLC ("Tourist Services"), Gordon Reger, Larry Reger, Reman LLC ("Reman"), RH Niagara Building, LLC ("RH Niagara"), John Does 1 through 10 (collectively, "defendants"), alleges upon information and belief as follows:

## THE PARTIES

      1.     Incredible Investments is a British Virgin Islands company.

      2.     Upon information and belief, Parlato is a resident of the State of New York and the claimed Manager of One Niagara, LLC ("One Niagara") and of defendant Tourist Services.

3.   Upon information and belief, defendant Whitestar is a business corporation organized under the laws of the State of New York with its designated place of business located at 8080 Tonawanda Creek Road, Clarence Center, New York 14032.

4.   Upon information and belief, Parlato is the President and sole stockholder of Whitestar.

5.   Upon information and belief, defendant One Niagara, Inc. is a business corporation organized under the laws of the State of New York with its given place of business located at 360 Rainbow Boulevard South, Niagara Falls, New York 14303.

6.   Upon information and belief, defendant One Niagara Plaza, Inc. is a business corporation organized under the laws of the State of New York with its given place of business located at 360 Rainbow Boulevard South, Niagara Falls, New York 14303.

7.   Upon information and belief, defendant Tourist Services is a limited liability company organized under the laws of the State of New York with a place of business located at 360 Rainbow Boulevard South, Niagara Falls, New York 14303.

8.   Upon information and belief, Parlato is a Member of Tourist Services.

9.   Upon information and belief, defendant Gordon Reger is a resident of the State of Florida.

10.   Upon information and belief, defendant Larry Reger is a resident of the State of Florida.

11.   Upon information and belief, defendant Reman is a limited liability company organized and existing under the laws of the State of New York.

12.   Upon information and belief, defendant RH Niagara is a limited liability company organized and existing under the laws of the State of New York.

13.     Upon information and belief, defendants John Does 1 through 10 are New York and/or Florida entities to whom the monies referred to hereinafter are being diverted.

14.     Upon information and belief, Gordon Reger, Reman and/or RH Niagara are also Members of Tourist Services, and otherwise the alter egos of defendant Larry Reger.

15.     Incredible Investments is a Member of One Niagara, a limited liability company organized under the laws of the State of New York with a place of business located at 360 Rainbow Boulevard South, Niagara Falls, New York 14303, based upon its execution of a document entitled "Operating Agreement of One Niagara Plaza, LLC" (the "Operating Agreement") and its execution of a document entitled "Rider #1 To Operating Agreement Re One Niagara Plaza, LLC" (the "Rider"), both also executed by Whitestar (the other purported Member of One Niagara).

16.     Pursuant to the Operating Agreement and Rider and other operative documents, Incredible Investments owns not less than fifty percent (50%) of the Membership Interests of One Niagara.

## JURISDICTION

17.     Plaintiff is a citizen of a foreign state and all defendants are citizens of different states. The amount in controversy herein exceeds $75,000.00. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

18.     The acts and omissions which are the subject of this action occurred within this district. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

## NATURE OF THIS ACTION

19.     This action involves real property commonly known as 360 Rainbow Boulevard South, Niagara Falls, New York (the "Property"), which is currently owned by One Niagara.

20.     This complaint seeks equitable relief with respect to Incredible Investments' rights and obligations with respect to One Niagara and the Property, as well as declaratory, injunctive, and monetary relief with respect to certain actions undertaken by defendants with respect to One Niagara and the aforementioned Property by Parlato and Whitestar in violation of the Operating Agreement and other contracts and breach of his statutory and common law duties and responsibilities to Whitestar's co-member in One Niagara, Incredible Investments, as well as actions undertaken by the remaining defendants with respect to said property.  This complaint also seeks the appointment of a temporary receiver to prevent further demonstrated waste and conversion of the assets of One Niagara (which consist principally of the Property) while the action is pending.

## FACTS COMMON TO ALL CLAIMS

**A.     The Property at Issue**

21.     In or about June 1999, an entity known as 360 Rainbow Associates, LLC, whose members included at the relevant times certain principals of plaintiff Incredible Investments, purchased the Property at issue in this litigation.

22.     That Property, formerly known as the Occidental Chemical Building, is comprised of 2.7 acres, including a nine story office building containing approximately 190,000 square feet of space and adjacent paved parking areas, and is located at 360 Rainbow Boulevard South in Niagara Falls, New York.

23.     In or about May 2002, 360 Rainbow Associates, LLC conveyed all of its right, title and

interest to the Property to another entity known as Aqua Falls Plaza, LLC, also controlled at the relevant

times by certain principals of plaintiff Incredible Investments and their partners.

24.     The Property was acquired with the intent and purpose of developing it into a walk-

through aquarium known as "Aqua Falls," designed as a unique addition to the tourist industry in

Niagara Falls, New York.

25.     The group involved in developing this project invested substantial time, effort and

resources, including nearly $10 million of capital towards the development and funding of the project

and improvement of the Property.  In addition to the money contributed by the investors directly, owners

of the Property obtained additional funds through notes secured by mortgages conveyed to various other

entities.

26.     By agreement dated and executed October 20, 2004 (the "October 20, 2004 Agreement"),

Aqua Falls Plaza LLC (a predecessor in interest of Incredible Investments which held title to the

Property), represented by Mr. David Ho, and Parlato or his corporate nominee (i.e., Whitestar) agreed

that Parlato/Whitestar would contribute $4 million to the Property in exchange for a percentage

ownership in the Property and otherwise in connection with their joint venture in that regard.

27.     On November 23, 2004, One Niagara filed articles of organization with the Secretary of

State of the State of New York.

28.     In reliance upon the promises of Parlato/Whitestar to provide the aforementioned $4

million of capital to the Property, as set forth in the October 20, 2004 Agreement, the One Niagara

Operating Agreement was executed on or about November 23, 2004 (effective December 1, 2004) by

Incredible Investments and Whitestar).

29.     Also in reliance on the aforementioned promises and representations, the Rider to the One Niagara Operating Agreement was also executed by Incredible Investments.

30.     In reliance upon the aforementioned promises by Parlato/Whitestar, Incredible Investments and the group of investors who held title to the Property through Aqua Falls Plaza, LLC agreed that all right, title and interest in the Property could and would be acquired by One Niagara through bidding at a foreclosure auction up to an amount owed on a second mortgage on the Property then held by Reger Investment Fund, LLLP f/k/a Reger Investment Fund, Ltd. and later assigned to One Niagara.

31.     The Property was acquired by One Niagara at foreclosure on or about December 8, 2004.

**B.     Parlato's Management of One Niagara**

32.     At all relevant times, Parlato has claimed to be the purported Manager of One Niagara.

33.     As claimed Manager of One Niagara, Parlato has been in the exclusive possession and control of all the operations and of all the books and records of One Niagara at all relevant times.

34.     Parlato has also, at all relevant times, maintained exclusive possession and control of the Property and all the significant revenues generated therefrom which, upon information and belief, exceed $6 million since the time One Niagara acquired the Property.

35.     Despite demands duly made starting in January 2005, Incredible Investments has never received any meaningful reports or documentation concerning the operations, assets and liabilities of One Niagara or Tourist Services while Parlato has acted as purported Manager of both.

36.     Parlato has consistently resisted any attempts by Incredible Investments to obtain meaningful information regarding the operations, assets and liabilities of One Niagara, the Property, or activities threat for Incredible Investments' own or independent review.

37.     During his time as claimed manager of One Niagara, Parlato has never convened an annual meeting of One Niagara, and has caused several annual meetings that were called by Incredible Investments to be indefinitely adjourned without any business being conducted, disclosures made, or resolutions passed, in contravention of the purported Operating Agreement and controlling law.

38.     Despite demands duly made, Incredible Investments has never received any distribution of revenues or profits from One Niagara or payments from Tourist Services during Parlato's time as claimed Manager of both.

39.     One Niagara revenues for 2005 were, upon information and belief, in excess of $1 million.

40.     Upon information and belief, One Niagara revenues for 2006 and 2007 were approximately $1.5 million annually, for 2008 $2.0 million, and for 2009 are expected to reach or exceed $2.5 million, for a total of $8.5 million since 2004.

41.     These revenues were derived, upon information and belief, from parking operations, from the rental of retail space on the first floor of the building and elsewhere, and from various tourist operations conducted through an "information" desk, and were largely received in cash.

42.     Upon information and belief, during his time as claimed Manager of One Niagara, Parlato has violated and threatened to violate state and federal gambling laws by acquiring, and threatening to acquire and install, slot machines and unauthorized gaming devices.

43.     Upon information and belief, after taking control of the building, Parlato decreased the value of the building by stripping and selling metal from the upper floors.

44.     Upon information and belief, Parlato also removed and sold aluminum louvers from the windows in the building, thereby decreasing the value of the building.

45.    Upon information and belief, without aluminum louvers, the building's central heating and cooling systems cannot operate effectively, if at all, and have in fact been inoperable from late 2005 to the present.

46.    Upon information and belief, as a result of the removal of the aluminum louvers, the vast majority of the building is no longer rentable due to the lack of an effective heating and cooling system, which further decreases the value of the building.

47.    Upon information and belief, during his time as claimed manager of One Niagara, Parlato has failed to maintain the building in compliance with local and state building codes, resulting in other significant respects in a strictly limited certificate of occupancy which omits the second through eighth floors, further diminishing the Property's value.

48.    Upon information and belief, the only known rentable portion of the building is currently the first-floor lobby area and parking lot.

49.    Upon information and belief, because only a small percentage of the building can be rented and only during part of the year, the value of the building has been decreased.

**C.    The Tourist Services Lease**

50.    On April 14, 2006, defendant Parlato, acting for both One Niagara and Tourist Services, executed a lease agreement purporting to lease the income-generating portions of the Property to Tourist Services (the "Lease").  Gordon Reger also signed the Lease on behalf of Reman and RH Niagara which, upon information and belief, are Members of Tourist Services and alter egos of defendant Larry Reger.

51.    Under the Lease, Tourist Services was granted substantial control of all usable portions of the Property (the "Leased Premises") for up to 35 years, and is entitled to keep seventy-five percent (75%) of the revenues received from its operations.  By the Lease, One Niagara is allowed to receive

only twenty-five percent (25%) of the gross revenues from the Property while remaining responsible for all taxes, certain insurance and utilities, and other expenses, thereby insuring that One Niagara would operate and use the Property at a deficit and financial loss and that Incredible Investments would likely not receive any revenues from the Property as co-Member of One Niagara for over three decades.

52.     Upon information and belief, under the terms of the Lease, Tourist Services acts as both leasing and management agent for One Niagara at the Property and regarding the Leased Premises and receives and/or diverts to Whitestar or others all revenues from the operation of the Leased Premises.

53.     Upon information and belief, Tourist Services has negotiated numerous subleases with various businesses that occupy parts of the lobby of the building and the adjacent parking lots.

54.     Upon information and belief, Tourist Services is merely an "alter ego" of defendants Parlato and Whitestar, existing only for the purpose of diverting the proceeds of business operations at the Property away from One Niagara (and thus Incredible Investments)  to their own benefit.

55.     Upon information and belief, One Niagara has never received any fair portion of the revenues from the Leased Premises since the Lease was executed, despite its continued responsibility for all taxes and other significant carrying costs, thereby depriving Incredible Investments of any profits from the Property for the next thirty-five years and ensuring that One Niagara will suffer millions of dollars in operating losses over the next thirty-five years.

**D.     Litigation by Parlato**

56.     On or about August 30, 2007, Parlato commenced an action in Supreme Court, Niagara County, both individually as manager of One Niagara and on behalf of Whitestar, seeking declaratory and injunctive relief against, inter alia, Incredible Investments' Executive Vice President Shmuel Shmueli and One Niagara (the "Parlato Action").

57.     Upon information and belief, the Parlato Action sought to preserve the status quo and perpetuate Parlato's and Whitestar's self-dealing and looting of the Property by preventing Incredible Investments and Mr. Shmueli from gaining access to the Property and/or information regarding the business activities being conducted there, as well as preventing them from calling or conducting an annual meeting of the members of One Niagara.

58.     Despite naming One Niagara as a defendant in the Parlato Action, Parlato did not arrange for counsel to defend One Niagara in that action.

59.     Upon information and belief, the Parlato Action is ongoing and One Niagara continues to be unrepresented, due to Parlato's refusal as purported Manager to obtain counsel for One Niagara in that action.

**FIRST CAUSE OF ACTION**
**[Fraud Against Parlato and Whitestar]**

60.     Plaintiff Incredible Investments repeats and realleges Paragraphs 1 through 59 with the same force and effect as if fully set forth herein.

61.     In or about 1998, Mr. David Ho, a Chinese national based in Hong Kong, began efforts to acquire property in Niagara Falls, New York for purposes of developing the Aqua Falls project together with certain other investors.

62.     By deed recorded June 28, 1999, 360 Rainbow Associates, LLC, whose members included certain investors in the Aqua Falls project, took title to the Property at issue in this action from Hooker Niagara Office Corporation, a subsidiary of Occidental Chemical Corporation, which had built the site as its Niagara Falls headquarters at a cost of $36 million.

63.     On or about May 31, 2002, 360 Rainbow Associates, LLC recorded a deed transferring all of its rights and obligations with respect to the Property to Aqua Falls Plaza, LLC, a new entity controlled largely by those investors in the Aqua Falls project.

64.     Mr. Ho and the Aqua Falls investors contributed approximately ten million dollars in capital to the project, including to maintain the Property, provide services to its tenants, including the United States Small Business Administration, and raise funds to move forward with the project.

65.     In addition to their own contributions of capital, the Aqua Falls investors raised additional monies through promissory notes secured by mortgages to two entities.

66.     On or about October 14, 2002, a company known as Altissima, Ltd., in which Mr. Patrick Ho held a majority interest, purchased from Hooker Niagara Office Corporation a mortgage on the Property originally executed by 360 Rainbow Associates, LLC which was recorded on June 28, 1999 to secure the principal sum of $3,500,000.00 (the "Altissima First Mortgage") together with the underlying promissory note also in that amount and the rents from the Property.  (Incredible Investments, Aqua Falls Plaza, LLC, 360 Rainbow Associates, LLC, and their respective principals, members and/or shareholders are hereinafter collectively referred to herein sometimes as the "Aqua Falls Investors.")

67.     Upon information and belief, on or about September 1, 2000, 360 Rainbow Associates, LLC also gave a second mortgage to an unrelated entity known as Reger Investment Fund, LLLP f/k/a

Reger Investment Fund, Ltd.  That mortgage secured a principal sum of $2,000,000.00 and was recorded in the Niagara County Clerk's Office on October 23, 2000 ("the Reger Second Mortgage").

68.     By October 2004, Aqua Falls Plaza, LLC held title to the Property.

69.     At that time, the Altissima First Mortgage on the Property secured a principal amount of $3,500,000.00 and a total agreed amount of $6,800,000.00.  However, the Reger Second Mortgage was in default by then and foreclosure proceedings had been instituted.

70.     Accordingly, the Aqua Falls Investors sought a partner to provide additional capital with the purpose of paying off the Reger Second Mortgage and financing operations and maintenance at the Property.

71.     In or about October 2004, Parlato proposed that he would fund a cash loan to the Aqua Falls Investors in the amount of $4,000,000.00 for the purpose of acquiring the Reger Second Mortgage and clearing title to the Property, as well as funding the aforementioned operations and maintenance.  In exchange for this loan, Parlato would receive some percentage of ownership in the Property.

72.     Pursuant to and by virtue of the October 20, 2004 Agreement, as well as his promises to Mr. David Ho and others, Parlato promised and represented that he would fund a cash loan towards the Property in the minimum amount of $4,000,000.00 in exchange for security and a percentage ownership in the Property.

73.     Upon information and belief, these representations by Parlato were false, and known by him to be false at the times they were made, in that Parlato was not in possession of $4,000,000.00, or anywhere near that amount, and/or had no intention or ability of performing under the October 20, 2004 Agreement by providing a $4,000,000.00 cash loan.

74.     Upon information and belief, prior to closing and execution by the Aqua Falls Investors of the Operating Agreement and Rider, the Aqua Falls Investors were led to believe by virtue of the October 20, 2004 Agreement and his other promises that Parlato could and would provide $4,000,000.00 cash to fund the loan and that Parlato's obligation to provide such funding was secured and enforceable pursuant to the Operating Agreement and Rider and previous agreements.

75.     Prior to and in anticipation of closing on the Operating Agreement and Rider, the Aqua Falls Investors caused and allowed all of their right, title and interest in the project and otherwise in the Property to be conveyed to plaintiff Incredible Investments, Ltd.

76.     In reliance upon the fraudulent misrepresentations of or on behalf of Parlato, Incredible Investments executed the Operating Agreement and subsequently executed the Rider on the basis of unilateral mistake based upon said fraudulent misrepresentations.

77.     One Niagara took title to the Property by Referee's Deed recorded on December 9, 2004 by virtue of its foreclosure of the Reger Second Mortgage, without Parlato or his wholly owned corporate entity, Whitestar, at that time advancing the promised cash loan.

78.     By virtue of the Operating Agreement and Rider and the Lease, the defendants have obtained possession of and total control over the Property and the income which portions of it generate, for their own benefit and to the exclusion of Incredible Investments.

79.     The actions of Parlato, on his own behalf and on behalf of Whitestar and/or Tourist Services, constitute fraud, for which plaintiff should have recovery of actual and punitive damages in amounts to be determined by the trier of fact, and on the basis of which the Operating Agreement and Rider should be rescinded and/or reformed.

## SECOND CAUSE OF ACTION
### [Declaratory Judgment re: Ownership Against Whitestar]

80.     Plaintiff repeats and realleges paragraphs 1 through 79 with the same force and effect as if fully set forth herein.

81.     Neither Frank Parlato nor any entity on his behalf (such as Whitestar) ever contributed the $4 million dollars cash required by the October 20, 2004 Agreement and/or his other promises and representations.

82.     Execution of the Operating Agreement and Rider conferring an ownership interest and managerial control on Parlato and Whitestar were obtained by fraud.

83.     Therefore, Whitestar is not entitled to a fifty percent (50%) ownership percentage in One Niagara and its ownership percentages should be adjusted accordingly.

84.     Plaintiff has no adequate remedy at law.

85.     Accordingly, if an owner at all, Whitestar should be declared to be an owner of less than fifty percent (50%) of the membership interests of One Niagara.

## THIRD CAUSE OF ACTION
### [Declaratory Judgment re: Proxy Against Parlato and Whitestar]

86.     Plaintiff repeats and realleges paragraphs 1 through 85 with the same force and effect as if fully set forth herein.

87.     The Rider contains a proxy agreement, whereby Incredible Investments granted a proxy to Whitestar to vote the Incredible Investment membership interest with respect to the election of managers.

88.     Upon information and belief, the proxy agreement contained in the Rider was obtained by the fraud alleged above and is invalid.

89.     In particular, the provisions of the Rider concerning the proxy and agreement that Parlato be the sole manager of One Niagara were part of the parties' entire agreement and conditioned upon Parlato: (i) acting in the best interests of One Niagara and Incredible Investments at all times as a fiduciary; and (ii) providing the aggregate $4,000,000 cash loan to the Property described in the October 20, 2004 Agreement and otherwise promised by him.

90.     Parlato breached his obligations under the Operating Agreement and Rider, the October 20, 2004 Agreement, and his other promises, thereby rendering the Proxy unenforceable and revocable, and voiding any agreement that Parlato be the sole manager of One Niagara.

91.     Moreover, even if the proxy agreement was valid when entered, Incredible Investments revoked the proxy agreement by execution of a revocation of proxy on or about August 15, 2007 after Parlato breached a promise to rescind the Lease "overnight" once Incredible Investments first learned of it on July 12, 2007.

92.     Plaintiff has no adequate remedy at law.

93.     Accordingly, the proxy agreement contained in the Rider to the Operating Agreement and Parlato's claimed position of sole Manager should be declared null and void and never effective.

### FOURTH CAUSE OF ACTION
### [Breaches of Fiduciary Duties and Duty of
### Loyalty Against Parlato and Whitestar]

94.     Plaintiff repeats and realleges paragraphs 1 through 93 with the same force and effect as if fully set forth herein.

95.     As claimed Manager of One Niagara (of which Incredible Investments is at least a 50% member), Parlato has a fiduciary duty and also owes a duty of good faith and loyalty to One Niagara's members.  Whitestar, as a member of One Niagara, also owes duties of good faith and loyalty to its co-member Incredible Investments.

96.     Upon information and belief, despite his fiduciary duties and duty of loyalty to One Niagara's members (which include Incredible Investments), Parlato has been operating One Niagara and Tourist Services for his own personal benefit and/or the benefit of other entities with which he is affiliated, including, but not limited to, Whitestar, Tourist Services, One Niagara, Inc., One Niagara Plaza, Inc., and FP Inc.

97.     Parlato has refused to meaningfully account for the substantial cash he has been collecting from parking lot and and/or rental retail revenues at the Property, and refuses to deposit the bulk of such cash into a bank account, and certainly into any bank account in the name of One Niagara.

98.     Upon information and belief, Parlato has used Tourist Services and Whitestar to divert monies away from One Niagara and Incredible Investments and to himself and/or Whitestar and/or others such as defendants Gordon Reger, Larry Reger, Reman and RH Niagara.

99.     Upon information and belief, Parlato has:  (i) usurped company opportunities for his own personal advantage and to the disadvantage of One Niagara's member Incredible Investments; and (ii) failed to discharge his duty of care by failing to consummate and/or pursue leasing opportunities of the second through eighth floors of the building.

100.    By using Tourist Services and/or Whitestar to divert monies away from One Niagara and Incredible Investments, Parlato has engaged in self-dealing and has violated his fiduciary duties, as well as his duties of loyalty and good faith to Whitestar's co-member Incredible Investments.

101.    Parlato has further violated his fiduciary duties by:  failing to distribute any revenues or profits from One Niagara to Incredible Investments; failing to provide Incredible Investments with any meaningful reports or documentation concerning the operations, assets and/or liabilities of One Niagara or the Property; failing to account to Incredible Investments, despite numerous and intense efforts by Incredible Investments to obtain such an accounting; otherwise consistently resisting any attempts by Incredible Investments to obtain information regarding the operations, assets and/or liabilities of One Niagara; and failing to convene any annual meeting or special meeting(s) of One Niagara (forcing Incredible Investments to commence a state court proceeding relative thereto).

102.    Upon information and belief, Parlato has further violated his fiduciary duties by removing aluminum louvers from the building, constructively evicting an anchor tenant in 2005, decreasing since then the rentable space in the building to the lobby area only, stripping metal from the upper floors of the building, failing to timely file income tax returns (if at all), failing to pay income taxes, treating employees as independent contractors for withholding purposes, failing to pay property and school taxes (which now approach or exceed $1 million), and failing to come into compliance with local and state ordinances and codes respecting the building.

103.    Despite clear and repeated instructions from plaintiff Incredible Investments, through its agents and representatives, to Parlato to pay property taxes and school taxes, and to direct revenues to that specific purpose, Parlato has failed and refused to do so.

104.    To the contrary, upon information and belief, Parlato has put the cash revenues that he was directed by plaintiff to pay to the City of Niagara Falls, the County of Niagara and the Niagara Falls School District, etc. directly into his own pocket or to accomplices, entities and affiliates enlisted by him to further his scheme.

105.    Upon information and belief, since December 2004 until the current date, Parlato has diverted in excess of three million dollars ($3,000,000) in net cash revenues from parking lot operations and lobby vendor rental income to himself and/or entities he controlled.

106.    Upon information and belief, the aforementioned are only a portion of the cash revenues that Parlato has diverted from One Niagara's member Incredible Investments under the guise of the illegal Tourist Services Lease and otherwise directly to Whitestar.

107.    Upon information and belief, Whitestar has been complicit in Parlato's actions and omissions (such as the failure to pay taxes) or to hold any annual meetings, as taken on its behalf, as set forth above, in violation of its duties of good faith and loyalty to Incredible Investments.

108.    As a result of the foregoing breaches of Parlato's fiduciary duties, and Whitestar's breaches of its duties of good faith and loyalty, plaintiff has been damaged in an amount to be determined by the trier of fact, Parlato should be removed as the Manager of One Niagara, and Incredible Investments' proxy to Whitestar must be declared null and void.

### FIFTH CAUSE OF ACTION
**[Waste Against Parlato]**

109.    Plaintiff repeats and realleges paragraphs 1 through 108 with the same force and effect as if fully set forth herein.

110.    Upon information and belief, Parlato has committed waste of One Niagara's funds and assets thereby harming One Niagara's member Incredible Investments by, *inter alia*, entering the Lease, failing to properly maintain the building thereby decreasing its rentable space, stripping metal from the upper floors and exterior of the building, and diverting monies from the Property, all for the purpose of depriving, impairing, and eliminating the rights of Incredible Investments as a member of One Niagara.

111.     Such actions by Parlato constitute waste, for which Incredible Investments should have a monetary recovery equal to the amount by which its membership interest in One Niagara has been damaged thereby, which amount should be determined by the trier of fact.

## SIXTH CAUSE OF ACTION
### [Conversion Against Parlato, Whitestar, One Niagara, Inc. and One Niagara Plaza, Inc.]

112.     Plaintiff repeats and realleges paragraphs 1 through 111 with the same force and effect as if fully set forth herein.

113.     By their conduct, including but not limited to, the entry into the Lease and diverting of funds (such as revenues from the Property) and assets from One Niagara directly to Whitestar, One Niagara, Inc. and/or One Niagara Plaza, Inc., Parlato and/or Whitestar and/or One Niagara, Inc. and/or One Niagara Plaza, Inc. have converted funds and assets of One Niagara to the detriment of plaintiff.

114.     The unauthorized use of such funds and assets constitutes conversion, for which plaintiff should be awarded actual damages in an amount to be determined by the trier of fact, plus punitive damages, in an amount to be determined by the trier of fact.

## SEVENTH CAUSE OF ACTION
### [Constructive Trust Against Parlato and Whitestar]

115.     Plaintiff repeats and realleges paragraphs 1 through 114 with the same force and effect as if fully set forth herein.

116.     Because of the fiduciary duties and duties of loyalty owed by defendants Parlato and Whitestar to plaintiff Incredible Investments, any monies they received from the Property (including all unaccounted-for cash receipts and all monies received under the Tourist Services Lease) were received for the benefit of and in constructive trust for plaintiff.

117.    By virtue of the foregoing, plaintiff is entitled to have a constructive trust placed on all monies received or to be received by defendants Parlato and Whitestar from the Property and otherwise in connection with One Niagara's operation of the Property, wherever located and whenever generated, and, to the extent such monies have been received but are no longer in the possession of Parlato or Whitestar, to have said defendants immediately restore said monies to be held in constructive trust for the benefit of plaintiff.

## EIGHTH CAUSE OF ACTION
### [Conversion Against Tourist Services, Larry Reger, Gordon Reger, Reman, RH Niagara, and John Does 1 through 10]

118.    Plaintiff repeats and realleges paragraphs 1 through 117 with the same force and effect as if fully set forth herein.

119.    Upon information and belief, Tourist Services is an alter ego for its members and/or their principals, including Parlato, Gordon Reger, and Larry Reger, and acts solely for the purpose of diverting money from One Niagara and its member Incredible Investments to them and/or others acting with them in their individual capacities, including without limitation defendants Parlato, Larry Reger, Gordon Reger, and/or John Does 1 through 10, including through Reman and RH Niagara.

120.    Tourist Services, Larry Reger, Gordon Reger, Reman, RH Niagara, and John Does 1 through 10 thus wrongfully obtained possession of funds and assets and/or have participated or acquiesced in the diversion to others of funds and assets which properly belong to plaintiff.

121.    Tourist Services directly and/or through others such as Parlato, Larry Reger, Gordon Reger, and/or John Does 1 through 10 has and continues to exercise control over such funds and assets.

122.    Upon information and belief, these defendants wrongfully conspired with Parlato and/or Whitestar to convert funds and assets which rightfully belong to plaintiff.

123.    Each of these defendants are jointly and severally liable for all acts of conversion

committed by it individually or in concert with any other tortfeasor, including, but not limited to,

Parlato, Whitestar, Reman, RH Niagara, Mr. Larry Reger and/or Mr. Gordon Reger.

124.    Such actions by Tourist Services, Larry Reger, Gordon Reger, Reman, RH Niagara, and

John Does 1 through 10 constitute conversion for which plaintiff should have a monetary recovery in an

amount to be determined by the trier of fact.

### NINTH CAUSE OF ACTION
**[Unjust Enrichment Against All Defendants]**

125.    Plaintiff repeats and realleges paragraphs 1 through 124 with the same force and effect as

if fully set forth herein.

126.    Upon information and belief, Parlato, Whitestar, One Niagara, Inc., One Niagara Plaza,

Inc., Tourist Services, RH Niagara, Reman, Larry Reger, Gordon Reger, and John Does 1 through 10

were and are the recipients of improperly diverted funds and assets of One Niagara's member Incredible

Investments.

127.    By receipt of such funds and assets, Parlato, Whitestar, One Niagara, Inc., One Niagara

Plaza, Inc., Tourist Services, RH Niagara, Reman, Larry Reger, Gordon Reger, and John Does 1 through

10 have been unjustly enriched to the detriment of plaintiff, and should be ordered to make restitution

for all such funds and assets diverted from plaintiff, or the monetary equivalent, as determined by the

trier of fact.

### TENTH CAUSE OF ACTION
**[Injunctive Relief Against All Defendants]**

128.    Plaintiff repeats and realleges paragraphs 1 through 127 with the same force and effect as

if fully set forth herein.

129.    Plaintiff requests an order of the Court granting a preliminary and permanent injunction: (i) enjoining Parlato from performing any/all duties and/or exercising any/all rights to act as Manager of One Niagara without the prior written approval of the designated representative of Incredible Investments; (ii) enjoining Tourist Services from any involvement with or under the Lease, including, but not limited to, any activities related to parking and/or parking revenues and/or any operations inside the building, including, but not limited to, the ground floor and/or first floor at the Property; (iii) enjoining Parlato and/or Whitestar from operating any business under the name Tourist Services or otherwise outside of and/or not for the exclusive benefit of One Niagara and its members, and compelling them to immediately deliver to One Niagara all the revenues, receipts, cash or rights of Tourist Services and/or its managers and principals of whatsoever type, wherever located and whenever generated, and to share it with Incredible Investments in proportion with the amount of Incredible Investments' ownership interest in One Niagara as the Court shall determine exists (but in no event less than 50%).

130.    Without obtaining the requested injunctive relief, plaintiff has and will continue to suffer irreparable injury including because, among other things, no true or accurate record of the cash generated by the Property and collected and/or diverted by the defendants is being created.

131.    No prior request has been made for the relief requested herein.

132.    There exists no adequate remedy at law.

## ELEVENTH CAUSE OF ACTION
### [Temporary Receiver Against All Defendants]

133.    Plaintiff repeats and realleges paragraphs 1 through 132 with the same force and effect as if fully set forth herein.

134.    As set forth above, plaintiff has an interest in the Property at issue in this action, including but not limited to, the funds and assets of One Niagara, the Property, the building, and all revenues generated at or by the Property.

135.    Upon information and belief, there is a present danger that the funds and assets being diverted from One Niagara and the Property will be removed from the state, or lost, materially injured or destroyed.

136.    Therefore, in the alternative to the injunctive relief sought in plaintiff's tenth cause of action, Plaintiff demands that a temporary receiver with power to manage and maintain the Property of One Niagara, operate its business, receive and account for its income, discharge its liabilities, and account to the Court and One Niagara's members be immediately appointed and that all revenues, receipts, cash and rights as well as any/all future such sums generated at the Property, be placed in an interest bearing account controlled by the temporary receiver.

137.    Without obtaining the requested injunctive relief, plaintiff has and will continue to suffer irreparable injury including because, among other things, no true or accurate record of the cash generated by the Property and collected and/or diverted by the defendants is being created.

## TWELFTH CAUSE OF ACTION
### [Accounting of One Niagara Against Parlato and Whitestar]

138.    Plaintiff repeats and realleges paragraphs 1 through 137 with the same force and effect as if fully set forth herein.

139.    The Operating Agreement and controlling law require that the Manager of One Niagara shall keep or cause to be kept complete and accurate books of account of One Niagara.

140.    All such books of account are required by the Operating Agreement to at all times be maintained at the principal office of One Niagara and open to the inspection and examination of and by the members.

141.    Parlato has consistently resisted attempts by Incredible Investments to obtain meaningful information regarding the operations of One Niagara or an inspection of the books and records of One Niagara, in breach of the Operating Agreement and in violation of controlling law.

142.    Based on Parlato's resistance and failure and refusal to account to Incredible Investments and to provide information regarding the operations, assets and liabilities of One Niagara, plaintiff is entitled to a full accounting by Parlato and Whitestar of all income, revenues, profits, and expenditure and/or distributions of One Niagara funds, assets, business and/or employees and/or contractors since the formation of One Niagara.

### THIRTEENTH CAUSE OF ACTION
**[Interference Against Parlato, Tourist Services, Larry Reger, Gordon Reger, Reger, Reman, and RH Niagara]**

143.    Plaintiff repeats and realleges paragraphs 1 through 142 with the same force and effect as if fully set forth herein.

144.    Upon information and belief, defendants Parlato, Tourist Services, Larry Reger, Gordon Reger, Reman, and RH Niagara signed the Tourist Services Lease or caused it to be signed on behalf of Tourist Services with full knowledge of the October 20, 2004 Agreement, Operating Agreement and Rider.

145.    Upon information and belief, defendants Parlato, Tourist Services, Larry Reger, Gordon Reger, Reman, and RH Niagara entered into the Lease intending to interfere with the benefits enjoyed

by Incredible Investments under the October 20, 2004 Agreement, the Operating Agreement, and the Rider, which they did.

146.   The defendants' action in so doing were malicious, intentional, and without justification.

147.   Such actions by defendants constitute interference with contract for which plaintiff should have a monetary recovery in an amount determined by the trier of fact.

148.   Because of the willful and malicious nature of defendants' acts, the plaintiff is entitled to punitive damages in an amount to be determined by the trier of fact.

## JURY DEMAND

149.   Plaintiff demands a trial by jury of all claims so triable.

WHEREFORE, plaintiff demands judgment against defendants:

a.   on plaintiff's first cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact, and rescinding or reforming the Operating Agreement and Rider as obtained by fraud;

b.   on plaintiff's second cause of action, declaring and adjudging that Whitestar owns less than fifty percent (50%) of the Membership Interests of One Niagara, if any at all;

c.   on plaintiff's third cause of action, declaring and adjudging that the proxy agreement contained in the Rider to the Operating Agreement and Parlato's claimed position of sole manager are null and void and never effective;

d.   on plaintiff's fourth cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact, removing Parlato as Manager of One Niagara, and declaring and adjudging Incredible Investments' proxy to Whitestar null and void and never effective;

e.      on plaintiff's fifth cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact;

f.      on plaintiff's sixth cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact;

g.      on plaintiff's seventh cause of action, placing a constructive trust on all monies received by defendants Parlato and Whitestar from the Property, wherever located and whenever generated, including all unaccounted-for cash receipts and all monies received under the Tourist Services Lease or otherwise in connection with the operation of One Niagara and, to the extent such monies have been generated in the past but are no longer in the possession of Parlato or Whitestar, requiring that said monies be immediately restored and placed in trust for the benefit of plaintiff;

h.      on plaintiff's eighth cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact;

i.      on plaintiff's ninth cause of action, awarding actual and punitive damages in an amount to be determined by the trier of fact;

j.      on plaintiff's tenth cause of action, granting plaintiff a permanent injunction:  (i) enjoining Parlato from performing any/all duties and/or exercising any/all rights to act as Manager of One Niagara or the Property or performing any acts with respect to the Property without the prior written approval of the designated representative of Incredible Investments; (ii) enjoining Tourist Services from taking any actions under the Lease, including, but not limited to, any activities related to parking and/or parking revenues at the Property and/or the building; (iii) enjoining Parlato and/or Whitestar from operating any business under the name Tourist Services or otherwise compelling them to immediately deliver to One Niagara all the revenues, receipts, cash or rights of Tourist Services and/or

its managers and principals of whatsoever type, wherever located and whenever generated; and

(iv) allowing Incredible Investments to itself manage the Property and receive its proportionate share of

the income generated thereat or thereby;

       k.      on plaintiff's eleventh cause of action, pled in the alternative to Incredible

Investments' management of the Property, immediately appointing a temporary receiver over the assets,

business and operations of One Niagara and the Property and requiring that all existing revenues,

receipts, cash and rights as well as any/all future such sums generated at the Property, be placed in an

interest-bearing account controlled by the temporary receiver;

       l.      on plaintiff's twelfth cause of action, ordering and compelling an accounting by

Parlato, as claimed manager of One Niagara and Tourist Services, as requested, to include an accounting

of all entities with which he is affiliated, including without limitation One Niagara, Tourist Services,

Whitestar, One Niagara Plaza, Inc., One Niagara Plaza LLC, One Niagara, Inc., and FP Inc.;

       m.      on plaintiff's thirteenth cause of action, awarding actual and punitive damages in

an amount to be determined by the trier of fact;

       n.      awarding plaintiff reasonable attorney's fees and the costs and disbursements of

this action; and

       o.      awarding such other and further relief, legal and equitable, as the Court may deem

just and proper under the circumstances.

Dated: Buffalo, New York
      July 6, 2009

**BLOOM & SHONN LLP**

By:___ s/ ERIC A. BLOOM, ESQ._____
       Eric A. Bloom, Esq.
*Attorneys for Plaintiff*
*Incredible Investments Limited*
6 N. Pearl Street
Buffalo, New York  14202
(716) 885-1270
bloom@bloomcole.com