UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

INCREDIBLE INVESTMENTS LIMITED,                    **REPORT AND**
                                                   **RECOMMENDATION**
                            Plaintiff,
                                                   09-CV-00576(S)(M)
v.

FRANK PARLATO, JR.,
WHITESTAR DEVELOPMENT CORP.,
ONE NIAGARA, INC.,
ONE NIAGARA PLAZA, INC.,
TOURIST SERVICES, LLC,
GORDON REGER,
LARRY REGER,
REMAN LLC,
RH NIAGARA BUILDING, LLC, and
JOHN DOES 1 THROUGH 10,

                            Defendants.
_____


        This case has been referred to me by Hon. William M. Skretny for supervision of

pretrial proceedings, including the preparation of a Report and Recommendation on dispositive

motions [6].[1]  Before me is defendants' motion to dismiss the Amended Complaint of plaintiff

Incredible Investments Limited ("IIL") for lack of subject matter jurisdiction, and for an award of

attorney's fees [60].  For the following reasons, I recommend that defendants' motion  be granted

in part and denied in part.

_____
        [1]        Bracketed references are to CM-ECF docket entries.

## BACKGROUND

This action relates to a parcel of real property located at 360 Rainbow Boulevard South in the City of Niagara Falls, New York, which was owned by Aqua Falls Plaza, LLC ("Aqua Falls") for purposes of developing it into a tourist attraction. Amended Complaint [2], ¶¶22, 24 and 25. Under an October 20, 2004 agreement between Aqua Falls and defendant Frank Parlato, Jr., Parlato was granted an ownership interest in the property in exchange for his promise to loan $4 million to the property. Id., ¶¶26, 72. This was accomplished by the creation of an entity known as One Niagara LLC, which acquired the property. Id., ¶¶28, 30.

The members of One Niagara LLC are IIL and defendant Whitestar Development Corp. ("Whitestar"), which is owned by Parlato. Id., ¶¶4 and 75; Altissima defendants' Statement of Material Facts [151], Ex. B.[2] Parlato is the sole manager of One Niagara LLC under a Rider to the Operating Agreement, which grants Whitestar a proxy to vote IIL's membership interest with respect to the election of managers. Id., ¶¶87 and 89.

IIL alleges that Parlato never provided the $4 million loan, and that he has operated One Niagara LLC for his own benefit by diverting sums earned from the property through the creation of various entities, including defendant Tourist Services, LLC ("Tourist Services"), which leases the income generating portions of the property. Id. ¶¶34, 50, 73. Defendant Gordon Reger signed the Tourist Services' lease on behalf of defendants Reman LLC ("Reman") and RH Niagara Building, LLC ("RH"), as members of Tourist Services. Id., ¶50. IIL alleges that these entities are alter-egos of defendant Larry Reger. Id

---

[2] All citations beginning with "Altissima" refer to documents filed in a related action, entitled Altissima Limited v. One Niagara LLC et al (8-CV-756)(S)(M).

IIL alleges that subject matter jurisdiction arises under 28 U.S.C. §1332(a)(2) because it "is a citizen of a foreign state and all defendants are citizens of different states". Id., ¶17. In moving pursuant to Fed. R. Civ. P. ("Rule") 12(c) to dismiss the Amended Complaint for lack of subject matter jurisdiction, defendants argue that IIL's principal place of business is in New York (Roscetti Declaration [60], Point I; Grenga Sur-Reply Declaration & Combined Memorandum of Law [63], ¶¶7-8); that One Niagara LLC is a necessary party which shares British Virgin Islands ("BVI") citizenship with IIL[3] (Roscetti Declaration [60], Point II); that Tourist Services shares BVI citizenship with IIL (id., ¶33); that One Niagara Plaza Inc. and One Niagara Inc. share BVI citizenship with IIL (id., Point III), and that One Niagara LLC is an indispensable party (id., Point IV).[4] Each of these arguments will be addressed.

## ANALYSIS

"The burden of demonstrating subject-matter jurisdiction lies with the party asserting it". Mathirampuzha v. Potter, 548 F. 3d 70, 85 (2d Cir. 2008). In resolving issues of subject matter jurisdiction, "the District Court has leeway as to the procedure it wishes to follow". Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F. 3d 82, 88 (2d Cir. 2006). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court". Gibbs v. Buck, 307 U.S. 66, 71-2 (1939).

---

[3]     "For purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership." Handelsman v. Bedford Village Associates Ltd. Partnership, 213 F. 3d 48, 51-2 (2d Cir. 2000).

[4]     Point II and IV seem to overlap considerably.

"The court need not confine its evaluation to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." 2 Moore's Federal Practice (Third Ed. 2010), §12.30[3]; Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings").

## A.    Is IIL's Principal Place of Business in New York?

IIL is a corporation incorporated in the BVI. Schmueli Supplemental Declaration [51], ¶2(A) and Ex. A. However, under 28 U.S.C. §1332(c)(1), a corporation is considered to be a citizen not only of the place of its incorporation, but also "of the State where it has its principal place of business". "'Principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is . . . the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."  Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010).

IIL argues that its principal place of business is in Hong Kong, where its officers and directors reside, where officers' and directors' meetings and decisionmaking takes place, and where its books and records are located.  Schmueli Supplemental Declaration [51], ¶2(A-E). Defendants argued initially that "IIL's office is located at the Property" in Niagara Falls, New

York. Roscetti Declaration [60], ¶25. However, it is the location of the *principal* office, not the location of *an* office, which is determinative for citizenship purposes.[5]

Ignoring Mr. Schmueli's Supplemental Declaration, defendants argue that "no evidence has been put forward that IIL's principal place of business is anywhere else than . . . Niagara Falls, NY". Grenga Declaration [63], ¶7. Defendants note that after they sent correspondence to IIL at the Hong Kong address listed in its August 20, 2009 proxy, they were advised by Federal Express that "the package is undeliverable - recipient has moved". Grenga Declaration [56], ¶Twenty-seventh. However, the address to which they sent the correspondence (id., ¶Twenty-fifth) is different from the address shown for IIL on Mr. Schmueli's business card. *See* Altissima Shmueli Declaration [163], ¶8 and Ex. D.

Should they develop additional information in the future suggesting that IIL's principal place of business is in New York rather than Hong Kong, defendants may request an evidentiary hearing at that time. However, I do not believe that they have cast sufficient doubt upon Mr. Schmueli's statements as to the location of IIL's principal place of business to warrant a hearing at this time.

**B.      Is Tourist Services a BVI Citizen?**

Defendants next argue that Tourist Services' "members include One Niagara LLC, a BVI citizen, and as a result Tourist Services is also a BVI citizen". Roscetti Declaration

---

[5]      The parties dispute whether Mr. Schmueli had an office, or at least the use of an office, at the Property. However, even if he did, that does not undercut his assertion that IIL's principal place of business is located in Hong Kong.

[60], ¶34. If true, diversity would be defeated. *See* <u>Handelsman</u>, 213 F. 3d at 51-2 (holding that an LLC shares the citizenship of its members).

However, there is no competent proof that One Niagara LLC is a member of Tourist Services. Although defendant Parlato has stated that Tourist Services is owned by RH and One Niagara LLC (Altissima Parlato Declaration [151-4], ¶27, this claim is belied by the record. For example, Tourist Services' April 2006 Operating Agreement states that it is between Parlato "on behalf of a New York *corporation to be formed* having an address at 360 Rainbow Boulevard South, Niagara Falls, New York 14303 . . . and RH". Bloom Declaration [61], Ex. B (emphasis added). However, One Niagara LLC is not a corporation and was formed in November 2004, *prior* to the formation of Tourist Services. <u>Id.</u>, Ex. C.

Moreover, Parlato testified during his July 2009 deposition that it was merely his "intention" for One Niagara LLC to have an ownership interest in Tourist Services, either directly or through a corporation owned by One Niagara LLC. <u>Id.</u>, Ex D, p. 154. During One Niagara LLC's annual meeting in August 2009, Parlato wrote that:

> "One Niagara's *proposed* ownership or interest in Tourist Services
> is predicated upon a number of conditions which our lawyers will
> outline in a future correspondence with the members of One
> Niagara." <u>Id.</u>, Ex. E, p. 10 (emphasis added).

Parlato conceded that his intention to make One Niagara LLC a member of Tourist Services was never confirmed in a writing (<u>id.</u>, p. 157), and admitted that no corporation was formed by him to become a member of Tourist Services. <u>Id.</u>, p. 153. Defendants have submitted no evidence to indicate that Tourist Services was a member of One Niagara LLC at the time this action was commenced, or at the time the Amended Complaint was filed.

Therefore, I recommend that this argument be rejected as a basis for dismissal.

**C.  Do One Niagara Plaza, Inc and  One Niagara, Inc. Share One Niagara LLC's BVI Citizenship?**

Defendants argue that One Niagara Plaza, Inc. and One Niagara, Inc. are mere alter egos of One Niagara LLC, and should therefore be deemed to share its BVI citizenship. Roscetti Declaration [60], Point III.  In response, IIL argues that defendants cannot pierce the corporate veil in order to defeat jurisdiction. IIL's Memorandum of Law [62], Point IV.[6]

While IIL cites several cases holding that a corporation cannot pierce the corporate veil in order to *create* diversity jurisdiction (IIL's Memorandum of Law [62], p. 14), none of these cases  address piercing the corporate veil in order to *defeat* diversity jurisdiction. The only case cited by IIL which addresses piercing the corporate veil for jurisdictional purposes is  Coast Manufacturing Co., Inc. v. Keylon, 600 F. Supp. 696 (S.D.N.Y. 1985).  IIL's Memorandum of Law [62], p. 15.  In Coast Manufacturing, the plaintiff sought to ignore the citizenship of its subsidiary who the defendants had contracted with for the matter in controversy. 600 F. Supp. at 697-98.  Under these circumstances, the court held that the plaintiff could not pierce its corporate veil so as to assert the claims of its subsidiary in order to *create* diversity jurisdiction.  Id. at 698.

However, piercing the corporate veil to defeat jurisdiction is another matter. "Federal courts are divided as to the applicability of alter - ego analysis to the determination of a

---

[6]        Alternatively, defendants argue that Incredible Investments mistakenly named One Niagara, Inc., a non-existent entity, as a defendant rather than One Niagara LLC.  Roscetti declaration [60], ¶¶39-40. However, Incredible Investments responds that it intended to name One Niagara, Inc, as a defendant "because it is among the several entities used at various times by Frank Parlato to further his personal interests". Incredible Investments' Memorandum of Law [62], p. 15. Moreover, defendants fail to explain why they answered and moved on behalf of One Niagara Inc. if it does not exist.

corporation's citizenship for purposes of determining federal diversity jurisdiction." O'Donnell v. Club Mediterranee S.A., 2008 WL 794975, *9 (E.D.N.Y. 2008). Although the Second Circuit has not ruled on this issue, the prevailing view in this Circuit appears to be that a subsidiary, which is an alter - ego of its parent, adopts the citizenship of its parent. *See* Gyadu v. Hartford Insurance Co., 283 F. Supp. 2d 740, 744 (D.Conn. 2003) ("A subsidiary does not have a distinct principal place of business from its parent if it is merely an 'alter ego' or agent of the parent corporation"); Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003) ("Although an alter ego claim is perhaps most commonly used to 'pierce the corporate veil' for the purpose of imposing liability upon a parent for the acts or agreements of its subsidiary, a separate version of alter ego analysis is used to determine the citizenship of related companies for diversity purposes"); Powers v. Fox Television Stations, Inc., 907 F.Supp. 719, 722 (S.D.N.Y.1995) ("Courts have applied the "alter ego" analysis to determine the citizenship of related companies for diversity purposes").

Defendants bear the burden of proof on their alter ego claim. Powers, 907 F. Supp. at 922; Farrell v. M.S. Carriers, Inc., 1999 WL 307685, *1, n. 3 (W.D.N.Y. 1999) (Elfvin, J.). Determining whether one corporation is the alter ego of another requires consideration of factors "such as: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation,

(7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F. 2d 131, 139 (2d Cir. 1991).

While defendants argue that "Plaintiff's complaints and the multitude of Declarations and Affidavits submitted in the furtherance of its prior applications to this Court recites each of these factors as justification for their prior motions and demanded relief" (Roscetti Declaration [60], ¶37), they fail to cite any particular document in this regard, or to explain how it relates to the factors at issue. "Since defendants bear the burden of persuasion on this [issue], their skeletal assertion represents a patent failure to carry their initial burden." Sulehria v. City of New York, 670 F.Supp.2d 288, 323 (S.D.N.Y. 2009).

If defendants truly believed that any of them are alter egos of the others, it would have been a simple matter for them to say so directly and unequivocally - since, after all, they are the ones who should know. Instead, they take a circuitous approach, arguing that Altissima Limited, the plaintiff in the related action (08-CV-0756S), has alleged that "'upon information and belief, One Niagara Plaza, LLC and One Niagara Plaza, Inc. are under common ownership or control with One Niagara and/or they from time to time hold each other out as one and the same entity or otherwise ignore their separate identities and/or otherwise acted with respect to the events, transactions, and occurrences alleged herein'". Roscetti Declaration [60], ¶35, n. 13 (*quoting* Altissima's Amended Complaint [89], ¶5).

However, defendants fail to mention that they have *denied* Altissima's allegations in that regard. *See* Altissima defendants' Answer to Amended Complaint [101], ¶5. Defendants cannot have it both ways, by now asserting as undisputed an allegation which their pleading denies.  "Pleadings are for the purpose of accurately stating the pleader's version of the case, and they bind unless withdrawn or altered by amendment." Sinclair Refining Co. v. Tompkins, 117 F.2d 596, 598 (5th Cir.1941); In re Ponderosa Development, LP, 2007 WL 1556866, *2 (Bk.E.D.Tex.2007) ("it is elementary law that parties are bound by their pleadings").

For these reasons, I recommend that defendants' "alter ego" argument be rejected.


**C.    Is One Niagara LLC an Indispensable Party Whose Joinder Defeats Diversity?**

Defendants contend that, given the nature of the allegations and relief sought by IIL, One Niagara LLC is an indispensable party within the meaning of Rule 19, and that since its joinder would defeat diversity, the action must be dismissed. Roscetti Declaration [60], Point IV.

IIL initially responds that defendants waived this defense by failing to assert it in their Answer to the Amended Complaint (although they did raise the defense in their original Answer). Bloom Declaration [61], ¶9.  However, this defense may be considered even if not raised in the answer. *See* Rule 12(h)(2). "'The absence of an indispensable party is considered to be so significant a defect that most courts have indicated that it may be raised for the first time subsequent to the trial or on appeal.'" Bartfield v. Murphy, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008). "The issue of indispensability is one that courts have an independent duty to consider *sua sponte*, if there is reason to believe dismissal on such grounds may be warranted". Citizens Against Casino Gambling in Erie County v. Kempthorne, 471 F. Supp. 2d 295, 312 (W.D.N.Y.

2007) (Skretny, J.), <u>amended on reconsideration on different grounds</u>, 2007 WL 1200473 (W.D.N.Y. 2007).

Turning to the merits of defendants' argument, a two-step inquiry under Rule 19 is required in order to determine whether One Niagara LLC is an indispensable party. First, I must determine whether it is a *necessary* party under Rule 19(a). A necessary party is a person whose joinder is necessary in order to accord complete relief among the existing parties, to protect that person's interests, or to prevent the existing parties from a substantial risk of incurring multiple or inconsistent obligations. Rule 19(a)(1)(A) and (B). If One Niagara LLC is a necessary party, but joinder is not feasible, I must then "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed". Rule 19(b).

Defendants argue that One Niagara LLC is an indispensable party because the Amended Complaint asserts derivative rather than direct claims. Roscetti Declaration [60], Point IV. IIL responds that "a cause of action for breach of fiduciary duty, and all causes of action flowing from that breach, is a personal and direct claim because the fiduciary duty owned by one LLC member to another LLC member is separate and independent from any duty owed to the LLC". IIL's Memorandum of Law [62], p. 16.[7]

---

[7]     Defendants argue that IIL, as the non-managing member of One Niagara LLC, cannot "amend its pleadings to include One Niagara LLC as a Plaintiff". Grenga Declaration [63], ¶19. However, "in a derivative suit, the entity on whose behalf suit is brought may be re-aligned as a defendant for diversity purposes when it is 'hostile' to the action". <u>DirecTV Latin America, LLC v. Park 610, LLC</u>, 2009 WL 692202, *5  (S.D.N.Y. 2009), <u>report and recommendation adopted</u>, 614 F. Supp. 2d 446 (*citing*  <u>Lewis v. Odell</u>, 503 F. 2d 445, 447 (2d Cir. 1974)("As a general rule the federal courts are required to realign parties according to their real interests so as to produce an actual collision of interests")). Thus, even if IIL lacks authority to bring suit on One Niagara LLC's behalf, given the allegations of the Amended Complaint that One Niagara LLC is under the sole control of Parlato, One Niagara LLC  would be more properly aligned as a defendant.

"Whether a claim is derivative or direct is a question of state law." Bartfield, 578 F. Supp. 2d at 645. "Traditionally, courts apply the 'direct injury test' to determine if a shareholder's claim must be raised derivatively." Id. at 646. "The critical question posed by the direct injury test is whether the damages a plaintiff sustains are derivative of an injury to a third party. If so, then the injury is indirect; if not, it is direct. . . . However, where the plaintiff's injury is direct, the fact that another party may also have been injured and could assert its own claim does not preclude the plaintiff from asserting its claim directly". Excimer Associates, Inc. v. LCA Vision, Inc., 292 F. 3d 134, 139-140 (2d Cir. 2002).[8]

Accordingly, I will address each cause of action individually:

### 1. First, Second and Third Causes of Action

IIL's first cause of action alleges that Parlato fraudulently induced IIL to execute the Operating Agreement and Rider based upon his unfulfilled obligation to provide a cash loan of $4 million to One Niagara LLC. Amended Complaint [2], ¶¶60-78. IIL seeks recovery of actual and punitive damages as well as rescission or reformation of the Operating Agreement and Rider. Id., ¶79. The second and third causes of action seek a declaratory judgment that Whitestar is an owner of less than 50% of the membership interest of One Niagara LLC, and that the proxy agreement contained in the Rider and Parlato's position as manager of One Niagara LLC are null and void. Id., ¶¶85 and 93.

---

[8] Despite the fact that the New York LLC Act does not expressly include the right of members to bring derivative actions, members of an LLC can bring derivative actions under common law principles. See Tzolis v. Wolff, 10 N.Y.3d 100, 105-106 (2008).

"A membership interest in the limited liability company is personal property. A member has no interest in specific property of the limited liability company." NY Limited Liability Company Law §601. These causes of action emanate from the agreement reached between the members of One Niagara LLC and seek to define the membership rights and interests of the members. Because they address the interests of the members rather than the assets of One Niagara LLC, I conclude that these claims are direct rather than derivative. *See* DirecTV Latin America, LLC, 2009 WL 692202, *9 (S.D.N.Y. 2009) (finding the LLC (LAS) to be dispensable to a suit between its members (Direct TV and Park 610) where "DirecTV is not seeking rights in any assets belonging to LAS. Rather, it seeks a determination of the proper ownership of LAS as between DirecTV and Park 610, and for specific performance of Park 610's purported obligation to transfer Park 610's interest for book value").[9]

### 2. Fourth Cause of Action

IIL's fourth cause of action alleges that Parlato, as the manager of One Niagara LLC, and Whitestar, as a member of One Niagara LLC, breached the duties of good faith and loyalty owed to IIL by, *inter alia*, usurping One Niagara LLC's business opportunities for their own advantage and diverting monies away from One Niagara LLC. Amended Complaint [2],

---

[9]      *Cf.* Trademark Retail, Inc. v. Apple Glen Investors, LP, 196 F.R.D. 535, 541-542 (N.D.Ind. 2000) ("At issue are the very Agreements which appear to have served as the basis for the creation of Apple Glen Crossing LLC in the first instance. As such it is clear to the Court that Apple Glen Crossing LLC is a necessary party").

¶¶95-107.  IIL seeks to have Parlato removed as manager of One Niagara LLC and to declare the proxy agreement to the Rider null and void.  Id., ¶108.

This cause of action asserts two distinct claims: one against Parlato, as manager of One Niagara LLC, and one against Whitestar, as member of One Niagara LLC.  Each claim must be analyzed separately because "there are . . . occasions when the same set of facts can give rise both to a direct claim and a derivative claim".  Starr Foundation v. American International Group, Inc., __ N.Y.S. 2d ___, 2010 WL 2104535, *9  (1st Dep't. 2010).

Turning first to the claim against Parlato, as a manager he has a statutory duty to perform his duties "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances". NY Limited Liability Company Law §409(a).  Such claims "typically generate[] derivative causes of action by members . . . against managing members and directors, respectively".  McGuire Children, LLC v. Huntress, 24 Misc. 3d 1202(A), 2009 WL 1693725, *16 (Sup. Ct. Erie Co. 2009).[10]

On the other hand, "the fiduciary duties owed by . . . LLC members are owed directly to one another and ordinarily cause harm first to the . . . LLC member".  McGuire Children, LLC, 2009 WL 1693725 at *16.  Thus, "a claim of a breach of fiduciary duty to an LLC is inherently a breach of contract cause of action as among the members of the LLC."  King

---

[10]     Compare with Venizelos v. Oceania Maritime Agency, Inc., 268 A.D.2d 291, 291 (1st Dep't. 2000) (finding claims against manager of a family business to be direct insofar as he "breached fiduciary duties he owed to plaintiffs independent of the duties he owed to the holding company").

ex rel. Massey Knakal Realty of Brooklyn, LLC v. Massey Knakal Realty Holdings LLC, 2009 WL 2712172, *3 (Sup. Ct. Kings Cty. 2009).[11]

### 3.   Fifth, Sixth, Eighth and Ninth Causes of Action

IIL's fifth cause of action alleges that "Parlato has committed waste of One Niagara's funds and assets thereby harming One Niagara's member Incredible Investments". Amended complaint [2], ¶110.  The sixth cause of action similarly alleges that Parlato and entities he controls have "converted funds and assets of One Niagara to the detriment of plaintiff"(id., ¶113), and the eighth cause of action repeats the conversion claims against Tourist Services and the remaining defendants.  Id., ¶¶119-124.  The ninth cause of action alleges unjust enrichment against all defendants as "recipients of improperly diverted funds and assets  of . . . Incredible Investments".  Id., ¶126.

These claims, which arise from the diversion of One Niagara LLC's assets and defendants' enrichment as a result of this diversion, are derivative.  See Bartfield, 578 F. Supp. 2d at 649 ("Claims that [the LLC's] assets were misappropriated allege an injury to [the LLC], and an injury to [its member] that is entirely derivative of Murphy's failure to preserve an asset owned by [the LLC]"); DirecTV Latin America, LLC, 2009 WL 692202 at *10 ("While it is possible that some aspect of this claim might seek redress for harm to DirecTV, it is difficult to understand how a claim of corporate waste brought against Avila and Park 610 could be characterized as anything other than a derivative claim").

---

[11]     Compare with DirecTV Latin America, LLC, 2009 WL 692202 at *10 (finding that a breach of fiduciary duty brought against a member  and that member's principal to be a derivative claim).

Because One Niagara LLC "is a separate legal entity with rights and obligations distinct from those of its members; the Court cannot presume its interests are not also distinct from those of its members". <u>Bartfield</u>, 578 F. Supp. 2d at 650.  For example "an adverse judgment against the defendants in the present case would expose them to the risk of duplicate recoveries in the event that CFE subsequently asserted direct claims against them. This risk can be avoided, of course, by joining CFE as a party". <u>Id</u>.  Thus, "the fact that all members of the Company are before the Court is insufficient to assure adequate representation of the Company's interests where, as here, the members are in conflict". <u>Weber v. King</u>, 110 F. Supp. 2d 124, 128 (E.D.N.Y. 2000).

In an effort to recharacterize any derivative claims, IIL "disavows any such derivative theory of recovery herein."  Bloom Declaration [61], ¶10. However, I fail to see how - absent a further amendment of the Amended Complaint (which has neither been sought nor granted) -  IIL can disavow the allegations of that pleading.  *See* <u>Sinclair Refining</u>, <u>Ponderosa Development,</u> <u>supra</u>.


**4.      Seventh and Twelfth Causes of Action**

These causes of action seek to restrain the alleged diverted funds by means of a constructive trust (seventh cause of action) and an accounting of any funds that have been diverted from One Niagara LLC (twelfth cause of action).  Amended Complaint [2], ¶¶117, 142. Such claims are derivative in nature.  *See* <u>Bartfield</u>, 578 F. Supp. 2d at 650 -651 (finding claims for accounting of diverted business and for a constructive trust over the diverted  business to be

derivative); <u>DirecTV Latin America, LLC</u>, 2009 WL 692202 at *11 ("Plainly, LAS is a necessary and indispensable party to any claim seeking to impose a constructive trust on its equity").

> **5.      Tenth Cause of Action**

IIL's tenth cause of action seeks a preliminary and permanent injunction enjoining Parlato from acting as manager of One Niagara LLC, enjoining Tourist Services from any involvement with its lease with One Niagara LLC, and enjoining Parlato and/or Whitestar from operating any business under the name Tourist Services, and directing the return to One Niagara LLC of all revenues of Tourist Services "to share . . . with Incredible Investments in proportion with the amount of Incredible Investments' ownership interest in One Niagara".  Amended Complaint [2], ¶129.

To the extent that IIL seeks a share of the funds returned by Tourist Services  to One Niagara LLC, it is a derivative claim as these sums are the property of One Niagara LLC. *See* NY Limited Liability Company Law §601; <u>Bartfield</u>, 578 F. Supp. 2d at 649; <u>DirecTV Latin America, LLC</u>,  2009 WL 692202 at *10.

> **6.      Eleventh Cause of Action**

IIL's eleventh cause of action seeks the "appoint[ment of] a temporary receiver over the assets, business and operations of One Niagara and Property".  Amended Complaint [2], wherefore clause, ¶k.   To the extent this claim seeks control of One Niagara LLC's assets, it is a derivative claim.  *See*  <u>DirecTV Latin America, LLC</u>, 2009 WL 692202 at *11.

7.      **Thirteenth Cause of Action**

IIL's thirteenth cause of action alleges that all of the defendants, with the exception of the One Niagara entities and Whitestar, interfered with "the benefits enjoyed by Incredible Investments under the October 20, 2004 Agreement, the Operating Agreement, and the Rider".  Amended Complaint [2], ¶145.  Because this cause of action emanates from the agreements reached between the members of One Niagara and does not address the assets of One Niagara LLC, I find that it is a direct claim.  *See* DirecTV Latin America, LLC, 2009 WL 692202 at *9.

Since I find that portions of  IIL's fourth through twelfth causes of action assert derivative claims, I conclude that One Niagara LLC "is a necessary party under Rule 19(a) since it has an obvious interest in the derivative claims raised on its behalf, and would be unable in practice to protect that interest if not joined." Bartfield, 578 F. Supp. 2d at 650.  Because One Niagara LLC shares the citizenship of IIL, Handelsman, 213 F. 3d at 51-2 , "it is equally obvious that it cannot be made a party to this action without destroying [diversity] jurisdiction [under 28 U.S.C. §1332]".  Bartfield, 578 F. Supp. 2d at 650.

 "Rule 19(b) instructs the Court to consider a non-exclusive list of factors, including the extent a judgment rendered in the party's absence might be prejudicial to the person or those already parties; the extent to which protective provisions in the judgment, the shaping of relief, or other measures can lessen or avoid prejudice; whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Id.  "Applying these factors, courts appear unanimous in

concluding that the party on whose behalf a derivative claim is brought is indispensable and one whose absence warrants dismissal." Id.

Therefore, I recommend that IIL's claims against Parlato as manager of One Niagara set forth in its fourth cause of action, along with all of its claims asserted in the fifth through twelfth causes of action of the Amended Complaint, should be dismissed.[12]

## CONCLUSION

For these reasons, I recommend that defendants' motion [60] be granted to the extent of dismissing IIL's claims against Parlato as manager of One Niagara set forth in its fourth cause of action, along with all of its claims asserted in the fifth through twelfth causes of action of IIL's Amended Complaint, but that the motion otherwise be denied.[13]

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by August 2, 2010 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

---

[12]     IIL "still ha[s] an adequate remedy if we dismissed this action" because there appears to be "a pending state court action addressing many of the same issues involved here". Weber, 110 F.Supp.2d at 130.

[13]     My finding that IIL is an indispensable party as to some of the causes of action does not necessitate the dismissal of the entire complaint. See Bartfield, 578 F. Supp. 2d at 651.

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), may result in the district judge's refusal to consider the objection.

**SO ORDERED**

Dated: July 15, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge